IN THE CHANCERY COURT OF DAVIDSON COUNTY
STATE OF TENNESSEE

| | |
|---|---|
| TANYA CLEMENT, | ) |
| Plaintiff, | ) |
| v. | ) No.: 20-0974-II |
| | ) JURY DEMAND |
| THE SURGICAL CLINIC, P.L.L.C. | ) |
| Defendant. | ) |

**COMPLAINT**

Plaintiff, Tanya Clement, for her complaint against The Surgical Clinic, P.L.L.C. would show:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff, Tanya Clement, is a citizen of the State of Tennessee currently residing in Clarksville, TN.

2. Defendant, The Surgical Clinic, P.L.L.C. (herein after "The Surgical Clinic" or "Defendant") is a Tennessee professional limited liability company with its principal office located at 85 White Bridge Road, Suite 200, Nashville, TN 37205-1566. The Surgical Clinic may be served through its registered agent for service of process Christopher Stirling, also located at 85 White Bridge Road, Suite 200, Nashville, TN 37205-1564.

3. Jurisdiction and venue are proper in the Chancery Court of Davidson County. This claim arises out of Plaintiff's former employment at The Surgical Clinic's Downtown Clinic located at 356 24th Ave. North, Suite 400, Nashville, TN 37203. This action is brought pursuant to the Families First Coronavirus Response Act, Pub. L. No. 116-127, 134 Stat. 178 (2020), and

**Ex. 1**

specifically the Emergency Family Medical Leave Expansion Act (EFMLEA), and the Tennessee Human Rights Act, *T.C.A. §4-21-401 et. seq*.

**FACTUAL ALLEGATIONS**

4. The Surgical Clinic owns and operates approximately 20 medical clinics in Middle Tennessee. It employs more than 50 people within a 75-mile radius of its Downtown Clinic, but less than 500 people.

5. Plaintiff is a White female former employee of the Surgical Clinic. Plaintiff began her employment in December 2018 as a Medical Assistant and was, throughout her employment, a full-time employee. As a medical assistant, Plaintiff was assigned to Dr. Marc Rosen.

6. Until February 2020 Plaintiff had no performance or disciplinary issues, and no personal conflicts with any of her co-workers.

7. On or about January 30, 2020 the Surgical Clinic appointed a new Downtown Clinic Manager, Gabrielle Taylor. Ms. Taylor is Black. Almost immediately Plaintiff felt targeted, bullied, and discriminated against by Taylor because of her race. Taylor assigned Plaintiff an unfair workload and belittled her in front of her co-workers.

8. On February 14, 2020 Plaintiff had a discussion with Taylor regarding her schedule and that she felt overworked. On February 17, 2020 Plaintiff was called into The Surgical Clinic's Human Resources' office where she was informed that she was accused of cussing at Taylor, and that there would be an investigation into the matter. On February 20, 2020 Plaintiff was informed by HR that the investigation proved inconclusive. She was also informed that her schedule was being changed from 8:00am – 4:30pm to 7:30am – 4:30pm.

9. Plaintiff has young children in daycare and school and, since she also lives in Clarksville, having a 7:30am start time would not allow her sufficient time to take her children to

2

School and Daycare, and also get to work by 7:30am. Defendant was aware of her child-care situation when it abruptly changed her schedule. Plaintiff viewed the abrupt schedule change as Defendant's way to get her to resign.

10. Plaintiff raised her concerns with the abrupt schedule change with The Surgical Clinic's Chief Operating Officer (COO) and for the next few weeks went back and forth with the COO and HR regarding her new hours.

11. On March 13, 2020 the COO emailed Plaintiff confirming that she could continue to start work at 8:00 a.m. rather than 7:30 a.m.

12. On March 16, 2020 Plaintiff emailed Clinic Director Taylor informing her that COVID was impacting her children's daycare and school. On April 1, 2020 Plaintiff went on leave pursuant to the Emergency Family Medical Leave Act, a provision within the Families First Coronavirus Response Act, so that she could care for her children since schools and daycare had closed.

13. As its name suggests, the EFMLEA entitles employees who are unable to work because they must care for a dependent child due to COVID-19 to paid leave for a term of several weeks. *See* FFCRA §§ 3102(a)(2); 3102(b). Formally, it is an amendment to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* The Emergency Family Medical Leave Act (EFMLA) allows for 12 weeks of leave under Plaintiff's scenario. The EMFLA is a temporary expansion to the Family Medical Leave Act (FMLA) and the traditional requirements of the FMLA that an employee be placed back in their position upon returning from leave, and that retaliation for exercising one's right to take leave is prohibited, also apply to the EFMLA. An employee's rights and remedies under the EFMLA are the same as the FMLA.

3

14. On May 20, 2020 Plaintiff emailed the Clinic Director Taylor to let her know that she would be returning to work on June 4, 2020. The next day Plaintiff learned from a co-worker that Taylor had cleaned out her work desk and belongings.

15. On May 22, 2020 Clinic Director Taylor emailed Plaintiff informing her that "there have been several of written and verbal complaints about your behavior from the staff." According to Director Taylor, the complaints occurred before Plaintiff went on leave, but she was not able to address them at that time. Plaintiff had never been informed of any complaints by co-workers or staff regarding her behavior. The email went on to inform Plaintiff that due to the complaints, changes were being implemented upon her return. Those changes included that her prior agreement regarding her working hours was null and void, that her position had been changed from a medical assistant assigned to a doctor, to a full-time triage medical assistant, and that her workspace had been moved to triage on the 4th Floor. Triage is considered a less desirable position, and prior to this assignment medical assistants would rotate in and out of triage for short periods of time. There was no full-time triage medical assistant. Finally, the email stated that "I will need to see an immediate change in your behavior and your attitude."

16. Following receipt of Director Taylor's email, Plaintiff emailed the COO asking for a meeting. She received no response. On May 27, 2020 Plaintiff again emailed the COO as well as HR asking for a meeting to discuss her return to work. On that date she also submitted a formal complaint to HR that this was a violation of EFMLA, and that she was being discriminated against by Director Taylor because she is White. Since she began as the Clinic Director Taylor had hired several new employees, and in each instance they were Black. Moreover, Taylor treated Plaintiff's Black co-workers more favorably than her, and Plaintiff felt targeted.

4

17. On June 1, 2020 Plaintiff received a response from HR that a meeting would take place the next day. On June 2, 2020 Plaintiff met with HR. and the Area Clinic Manager. She was informed that Defendant would not change its position with respect to her return to work, and that they had no reason to investigate her formal complaint. She was then informed her EFMLA leave was being extended by two weeks because they did not think she was ready to return to work.

18. On June 10, 2020 Defendant informed Plaintiff that she was being transferred to another location even farther away from her home, and that her schedule would remain 7:30am to – 4:30 pm. Plaintiff was compelled to resign on June 17, 2020.

## COUNT I – EMERGENCY FAMILY MEDICAL LEAVE ACT

19. Paragraphs 1 through 18 are incorporated herein by reference as though fully set forth.

20. Defendant is a covered employer under the terms of the EFMLA.

21. Plaintiff was an eligible employee under the terms of the EFMLA in that she worked for Defendant for at least 12 months, worked at least 1,250 hours during the 12 months prior to her taking leave, and worked at a location where at least 50 employees are employed either at that location or within a 75- mile radius of that location.

22. Plaintiff had children in daycare and school impacted by COVID 19 and availed herself of her right to take leave pursuant to the EFMLA.

23. Defendant retaliated/discriminated against Plaintiff for exercising her rights under the EFMLA by giving her a less desirable position upon her return from leave, altering her work

schedule, and transferring her to another location, thus compelling her resignation. Defendant's violation was willful and intentional.

24. Plaintiff has suffered damages as a result of Defendant's violation of the EFMLA, entitling her to her actual damages including, but not limited to, lost wages, benefits, and compensation, liquidated damages, plus attorney's fees and costs.

## COUNT II – TENNESSEE HUMAN RIGHTS ACT, *T.C.A. §4-21-401 ET. SEQ*.

25. Paragraphs 1 through 18 are incorporated herein by reference as though fully set forth.

26. Alternatively and/or in addition to violating the EFMLA, Defendant has discriminated against Plaintiff as a result of her race in violation of the THRA. Plaintiff is a White female former employee of Defendant, was qualified for her position and was meeting all reasonable expectations of her employer. Defendant is an employer under the TRHA. Plaintiff was discriminated against by Defendant as a result of her race in the form a hostile work environment, and retaliation after she complained of the discriminatory behavior. Plaintiff's Black Clinic Director bullied and harassed her, belittled her in front of her co-workers, wrongfully initiated an HR investigation of Plaintiff, altered her work schedule, and transferred her to another location as a result of her race and her complaints. Plaintiff was constructively discharged.

27. Defendant is liable to Plaintiff for her back pay, front pay, compensatory damages for her severe humiliation, embarrassment, and emotional suffering, plus her attorney's fees and costs as allowed under the THRA.

6

WHEREFORE, premise considered, Plaintiff seeks a judgement against Defendant for her economic and non-economic damages, and liquidated damages in the amount of $500,000.00 or an amount to be proven at trial, plus her attorneys' fees and costs. Plaintiff further demands a jury hear all triable issues.

                                    Respectfully submitted,

                                    */s/ Mathew R. Zenner*
                                    Mathew R. Zenner (018969)
                                    *ZENNER LAW, PLLC*
                                    320 Seven Springs Way, Suite 250
                                    Brentwood, TN 37027
                                    Office: (615)425-3476
                                    mrzennerlaw@gmail.com

                                    *Attorney for Plaintiff*